**LeClairRyan**
*A Professional Corporation*
One Riverfront Plaza
1037 Raymond Boulevard, 16th Floor
Newark, New Jersey 07102
(973) 491-3600
Attorneys for Plaintiff, Travelodge Hotels, Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| TRAVELODGE HOTELS, INC., a Delaware Corporation, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 14- |
| v. | : | |
| | : | **VERIFIED** |
| NIJANAND, LLC, a Georgia Limited Liability Company; RAJ PATEL, an individual, also known as RAJENDRA PATEL, an individual; and INDU PATEL, an individual, also known as INDUBEN PATEL, an individual, | : | **COMPLAINT** |
| | : | |
| | : | |
| Defendants. | : | |

Plaintiff Travelodge Hotels, Inc., by its attorneys, LeClairRyan, complaining of defendants Nijanand, LLC, Raj Patel also known as Rajendra Patel, and Indu Patel also known as Induben Patel, says:

### PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Travelodge Hotels, Inc. ("THI") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Parsippany, New Jersey.

2.     Defendant Nijanand, LLC ("Nijanand"), on information and belief, is a limited liability company organized and existing under the laws of the State of Georgia, with its principal place of business at 1103 Kings Road, Tifton, Georgia 31794.

3.     Defendant Raj Patel, also known as Rajendra Patel ("R. Patel"), on information and belief, is a principal of Nijanand and a citizen of the State of Georgia, having an address at 1103 Kings Road, Tifton, Georgia 31794.

4.     Defendant Indu Patel, also known as Induben Patel ("I. Patel"), on information and belief, is a member of Nijanand and a citizen of the State of Georgia, having an address at 1103 Kings Road, Tifton, Georgia 31794.

5.     Upon information and belief, R. Patel and I. Patel are the only constituent members of Nijanand.

6.     The amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000.

7.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 & 1338, 15 U.S.C. § 1121 and, with respect to certain claims, 28 U.S.C. § 1367.

8.     This Court has personal jurisdiction over Nijanand by virtue of, among other things, section 17.6.3 of the March 2, 2009 franchise agreement by and between Nijanand and THI (the "Franchise Agreement"), described in more detail below, pursuant to which Nijanand has consented "to the non-exclusive personal jurisdiction of and venue in the New

Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey . . . ."

9.      This Court has personal jurisdiction over R. Patel and I. Patel by virtue of, among other things, the terms of a Guaranty (the "Guaranty"), described in more detail below, pursuant to which R. Patel and I. Patel acknowledged that they were personally bound by section 17 of the Franchise Agreement.

10.      Venue is proper in this District pursuant to section 17.6.3 of the Franchise Agreement, inasmuch as that provision contains an express waiver by Nijanand of any objection to venue in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

### The Travelodge® Marks

11.      THI is one of the largest guest lodging facility franchise systems in the United States, and is widely known as a provider of guest lodging facility services.

12.      THI owns and has the exclusive right to license the use of the service mark TRAVELODGE® and various related trade names, trademarks and service marks (certain of which are on the principal register of the United States Patent and Trademark Office), logos, and derivations thereof (the "Travelodge® Marks"), as well as the distinctive Travelodge® System, which provides guest lodging services to the public under the Travelodge® name and certain services to its licensees, including a centralized reservation system, advertising, publicity, and training services.

13.    THI or its predecessors first used the TRAVELODGE® mark in 1939 and the Travelodge® Marks are in full force and effect.  Certain of the registered Travelodge® Marks are incontestable pursuant to 15 U.S.C. § 1065.

14.    THI has given notice to the public of the registration of the Travelodge® Marks as provided in 15 U.S.C. § 1111.

15.    THI uses or has used the names "Travelodge" and "Thriftlodge," among others, as abbreviations of its brand name.

16.    Through its franchise system, THI markets, promotes, and provides services to its guest lodging licensees throughout the United States.  In order to identify the origin of their guest lodging services, THI allows its licensees to utilize the Travelodge® Marks and to promote the Travelodge® brand name.

17.    THI has invested substantial effort over a long period of time, including the expenditure of millions of dollars, to develop goodwill in its trade names and service marks to cause consumers throughout the United States to recognize the Travelodge® Marks as distinctly designating THI guest lodging services as originating with THI.

18.    The value of the goodwill developed in the Travelodge® Marks does not admit of precise monetary calculation, but because THI is one of the largest guest lodging facility franchise systems in the United States and is widely known as a provider of guest lodging facility services, the value of THI's goodwill exceeds hundreds of millions of dollars.

19.    The Travelodge® Marks are indisputably among the most famous in the United States.

<u>The Agreement Between The Parties</u>

20.    On or about March 2, 2009, THI entered into the Franchise Agreement with Nijanand for the operation of a 90-room guest lodging facility located at 1103 Kings Road, Tifton, Georgia 31794, Site No. 11369-83660-05 (the "Facility").  A true copy of the Franchise Agreement is attached hereto as <u>Exhibit A</u>.

21.    Pursuant to section 5 of the Franchise Agreement, Nijanand was obligated to operate a Travelodge® guest lodging facility for a 15-year term, during which time Nijanand was permitted to use the Travelodge® Marks in association with the operation and use of the Facility as part of THI's franchise system.

22.    Pursuant to section 7 and Schedule C of the Franchise Agreement, Nijanand was required to make certain periodic payments to THI for royalties, system assessments, taxes, interest, reservation system user fees, and other fees (collectively, "Recurring Fees").

23.    Pursuant to section 7.3 of the Franchise Agreement, Nijanand agreed that interest is payable "on any past due amount payable to [THI] under this [Franchise] Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid."

24.    Pursuant to section 3.6 of the Franchise Agreement, Nijanand was required to disclose, among other things, the amount of gross room revenue earned by Nijanand at the Facility for purposes of establishing the amount of royalties and other Recurring Fees due to THI.

25.     Pursuant to section 3.6 of the Franchise Agreement, Nijanand agreed to maintain at the Facility accurate financial information, including books, records, and accounts, relating to the gross room revenue of the Facility and, pursuant to sections 3.6 and 4.8 of the Franchise Agreement, Nijanand agreed to allow THI to examine, audit, and make copies of the entries in these books, records, and accounts.

26.     Pursuant to section 3.8 of the Franchise Agreement, Nijanand was obligated to maintain insurance coverage as required under the Systems Standards Manual throughout the entire 15-year term of the Franchise Agreement.

27.     Pursuant to section 11.2 of the Franchise Agreement, THI could terminate the Franchise Agreement, with notice to Nijanand, for various reasons, including Nijanand's (a) failure to pay any amount due THI under the Franchise Agreement, (b) failure to remedy any other default of its obligations or warranties under the Franchise Agreement within 30 days after receipt of written notice from THI specifying one or more defaults under the Franchise Agreement, and/or (c) receipt of two or more notices of default under the Franchise Agreement in any one year period, whether or not the defaults were cured.

28.     Pursuant to section 12.1 of the Franchise Agreement, Nijanand agreed that, in the event of a termination of the Franchise Agreement pursuant to section 11.2, it would pay liquidated damages to THI in accordance with a formula specified in the Franchise Agreement.

29.    Section 13 of the Franchise Agreement specified Nijanand's obligations in the event of a termination of the Franchise Agreement, including its obligation to immediately cease using all of the Travelodge® Marks

30.    Pursuant to section 17.4 of the Franchise Agreement, Nijanand agreed that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [Franchise] Agreement or collect amounts owed under this [Franchise] Agreement."

31.    Effective as of the date of the Franchise Agreement, R. Patel and I. Patel provided THI with a Guaranty of Nijanand's obligations under the Franchise Agreement.  A true copy of the Guaranty is attached hereto as Exhibit B.

32.    Pursuant to the terms of the Guaranty, R. Patel and I. Patel agreed, among other things, that upon a default under the Franchise Agreement, they would "immediately make each payment and perform or cause [Nijanand] to perform, each unpaid or unperformed obligation of [Nijanand] under the [Franchise] Agreement."

<u>The Defendants' Defaults and Termination</u>

33.    Nijanand has repeatedly failed to meet its financial and insurance obligations, in breach of the Franchise Agreement.

34.    By letter dated November 30, 2011, a true copy of which is attached hereto as Exhibit C, THI advised Nijanand that (a) it was in breach of the Franchise Agreement because it owed THI approximately $54,997.96 in outstanding Recurring Fees, (b) it had 10 days

within which to cure this monetary default, and (c) if the default was not cured, then the Franchise Agreement might be subject to termination.

35.    By letter dated February 9, 2012, a true copy of which is attached hereto as <u>Exhibit D</u>, THI advised Nijanand that (a) it was in breach of the Franchise Agreement because it owed THI approximately $61,894.43 in outstanding Recurring Fees, (b) it had 10 days within which to cure this monetary default, and (c) if the default was not cured, then the Franchise Agreement might be subject to termination.

36.    By letter dated April 13, 2012, a true copy of which is attached hereto as <u>Exhibit E</u>, THI advised Nijanand that (a) it was in breach of the Franchise Agreement because it owed THI approximately $67,875.06 in outstanding Recurring Fees, (b) it had 10 days within which to cure this monetary default, and (c) if the default was not cured, then the Franchise Agreement might be subject to termination.

37.    By letter dated June 7, 2012, a true copy of which is attached hereto as <u>Exhibit F</u>, THI advised Nijanand that (a) it was in breach of the Franchise Agreement because it owed THI approximately $71,145.90 in outstanding Recurring Fees, (b) it had 10 days within which to cure this monetary default, and (c) if the default was not cured, then the Franchise Agreement might be subject to termination.

38.    By letter dated July 20, 2012, a true copy of which is attached hereto as <u>Exhibit G</u>, THI advised Nijanand that (a) it was in breach of the Franchise Agreement because it owed THI approximately $78,422.89 in outstanding Recurring Fees, (b) it had 10 days within

which to cure this monetary default, and (c) if the default was not cured, then the Franchise Agreement might be subject to termination.

39.    By letter dated August 9, 2012, a true copy of which is attached hereto as Exhibit H, THI advised Nijanand that (a) it was in breach of the Franchise Agreement because it owed THI approximately $79,986.30 in outstanding Recurring Fees, (b) it had 10 days within which to cure this monetary default, and (c) if the default was not cured, then the Franchise Agreement might be subject to termination.

40.    By letter dated November 29, 2012, a true copy of which is attached hereto as Exhibit I, THI advised Nijanand that (a) it was in breach of the Franchise Agreement because it had not provided proof of insurance coverage, and (b) if it did not provide proof of proper insurance coverage, the Franchise Agreement might be subject to termination.

41.    By letter dated January 4, 2013, a true copy of which is attached hereto as Exhibit J, THI advised Nijanand that (a) it was in breach of the Franchise Agreement because it had not provided proof of insurance coverage, and (b) if it did not provide proof of proper insurance coverage, the Franchise Agreement might be subject to termination.

42.    By letter dated January 16, 2013, a true copy of which is attached hereto as Exhibit K, THI advised Nijanand that (a) it was in breach of the Franchise Agreement because it owed THI approximately $95,613.63 in outstanding Recurring Fees, (b) it had 10 days within which to cure this monetary default, and (c) if the default was not cured, then the Franchise Agreement might be subject to termination.

43.     By letter dated February 27, 2013, a true copy of which is attached as Exhibit L, THI terminated the Franchise Agreement, effective February 27, 2013, and advised Nijanand that  (a) it had to de-identify the Facility within 10 days from delivery of the termination notice, (b) all items bearing the Travelodge® Marks had to be removed, (c) it was required to pay to THI as liquidated damages for premature termination the sum of $180,000.00 as required under the Franchise Agreement, and (d) demand was made for all outstanding Recurring Fees through the date of termination.

44.     The termination of the Franchise Agreement precludes Nijanand from any further use of the Travelodge® Marks in or around the Facility.

45.     The termination of the Franchise Agreement precludes Nijanand from any further use of the Travelodge® Marks to induce the traveling public to use the Facility in any way.

46.     Since the termination of the Franchise Agreement, Nijanand has continued to use the Travelodge® Marks to induce the traveling public to rent guest rooms at the Facility.

47.     Since the termination of the Franchise Agreement, Nijanand has used the Travelodge® Marks without authorization to rent rooms through, among other things, failure to remove Travelodge® signage and continuing to identify the Facility as a Travelodge® guest lodging facility in response to telephone inquiries as to whether or not the Facility is a Travelodge®.

48.     Nijanand has continued to misuse the Travelodge® Marks despite receiving notification from THI to cease and desist from the misuse of the Travelodge® Marks.

## FIRST COUNT

49.     THI repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 48 of the Verified Complaint.

50.     Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a), provides in pertinent part that "[a]ny person who shall, without the consent of the registrant — use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant . . . ."

51.     Nijanand marketed, promoted, and rented, and continues to market, promote, and rent rooms at the Facility through the unauthorized use of the Travelodge® Marks, and such use caused and is likely to continue to cause confusion or mistake among prospective or actual customers, in violation of Section 32 of the Lanham Act.

52.     Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides in pertinent part that "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation . . . or as to the origin, sponsorship, or approval of . . . goods and/or services . . . shall be liable in a civil action . . . ."

53.     The acts of Nijanand in marketing, promoting, and renting rooms at the Facility, through and with the Travelodge® Marks, constitute:

(a)      a false designation of origin;

(b)      a false and misleading description of fact; and

(c)      a false and misleading representation of fact;

that caused and are likely to continue to cause confusion, or to cause mistake, or deception, as to the affiliation of Nijanand's Facility with THI, and to cause confusion, or to cause mistake, or deception, to the effect that THI sponsors or approves of the guest lodging services that Nijanand provides at the Facility, all in violation of Section 43(a) of the Lanham Act.

54.      Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), provides in pertinent part that "[t]he owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection."

55.      Nijanand's use of the Travelodge® Marks in connection with goods and services at the Facility, after the Travelodge® Marks became famous, caused and will continue to cause dilution and disparagement of the distinctive quality of the Travelodge® Marks, and lessened and will continue to lessen the capacity of the Travelodge® Marks to identify and distinguish the goods and services of THI, all in violation of Section 43(c) of the Lanham Act.

56.      Nijanand's on-going acts of infringement in violation of Sections 32, 43(a), and 43(c) of the Lanham Act are malicious, fraudulent, willful, and deliberate.

57.     Nijanand's on-going acts of infringement in violation of Sections 32, 43(a), and 43(c) of the Lanham Act have inflicted and continue to inflict irreparable harm on THI.

58.     THI has no adequate remedy at law.

59.     No previous injunctive relief has been awarded with respect to this matter in this case or any other case.

**WHEREFORE**, pursuant to 15 U.S.C. §§ 1114, and 1125(a) & (c), THI demands judgment against Nijanand:

(a)     Preliminarily and permanently restraining and enjoining Nijanand, its affiliates, subsidiaries, officers, agents, servants, employees and attorneys, and all those who act in concert or participation with them, from marketing, promoting, or selling guest lodging services at the Facility through and with the Travelodge® Marks; and

(b)     Granting compensatory damages, treble damages, attorneys' fees, prejudgment interest, costs of suit, and such other and further relief as this Court shall deem just and proper.

## SECOND COUNT

60.     THI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 59 of the Verified Complaint.

61.    Pursuant to sections 3.6 and 4.8 of the Franchise Agreement, Nijanand agreed to allow THI to examine, audit, and make copies of Nijanand's financial information, including books, records, and accounts, relating to the gross room revenue earned at the Facility.

62.    Nijanand has engaged in acts and practices, as described, which amount to infringement of the Travelodge® Marks in an unlawful, unfair, and fraudulent manner which is likely to confuse the public.

63.    As a result, Nijanand owes restitution and the disgorgement of profits, in an amount unknown to THI, and which amount cannot be ascertained without an accounting of the receipts and disbursements, profit and loss statements, and other financial materials, statements and books from Nijanand.

**WHEREFORE**, THI demands judgment ordering that Nijanand account to THI for any and all revenue derived as a result of marketing, promoting, or selling guest lodging services at the Facility through and with the Travelodge® Marks.

## THIRD COUNT

64.    THI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 63 of the Verified Complaint.

65.    By letter dated February 27, 2013, THI terminated the Franchise Agreement, effective February 27, 2013, due to Nijanand's monetary and insurance defaults.

66.    Section 12.1 of the Franchise Agreement provides that, in the event of termination of the Franchise Agreement due to action of Nijanand, Nijanand shall pay liquidated damages to THI within 30 days of termination.

67.     As a result of the termination of the Franchise Agreement, Nijanand is obligated to pay THI liquidated damages in the amount of $180,000.00, as calculated pursuant to section 12.1 of the Franchise Agreement.

68.     Notwithstanding THI's demand for payment, Nijanand has failed to pay THI the liquidated damages as required in section 12.1 of the Franchise Agreement.

69.     THI has been damaged by Nijanand's failure to pay liquidated damages.

**WHEREFORE**, THI demands judgment against Nijanand for liquidated damages in the amount of $180,000.00, together with interest, attorneys' fees, and costs of suit.

## **FOURTH COUNT**

70.     THI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 69 of the Verified Complaint.

71.     By virtue of the premature termination of the Franchise Agreement, THI sustained a loss of future revenue over the remainder of the 15-year term of the Franchise Agreement.

72.     If the Court determines that Nijanand is not liable to pay THI liquidated damages as required by section 12.1 of the Franchise Agreement then, in the alternative, Nijanand is liable to THI for actual damages for the premature termination of the Franchise Agreement.

73.     THI has been damaged by Nijanand's breach of its obligation to operate a Travelodge® guest lodging facility for the remaining term of the Franchise Agreement.

**WHEREFORE**, THI demands judgment against Nijanand for actual damages in an amount to be determined at trial, together with interest, attorneys' fees, and costs of suit.

### FIFTH COUNT

74.     THI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 73 of the Verified Complaint.

75.     Pursuant to section 7 and Schedule C of the Franchise Agreement, Nijanand was obligated to remit Recurring Fees to THI.

76.     Despite its obligation to do so, Nijanand failed to remit certain of the Recurring Fees due and owing under the Franchise Agreement, in the current amount of $122,614.15.

77.     Nijanand's failure to remit the agreed Recurring Fees constitutes a breach of the Franchise Agreement and has damaged THI.

**WHEREFORE**, THI demands judgment against Nijanand for the Recurring Fees due and owing under the Franchise Agreement, in the current amount of $122,614.15, together with interest, attorneys' fees, and costs of suit.

### SIXTH COUNT

78.     THI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 77 of the Verified Complaint.

79.     At the time of the termination of the Franchise Agreement, Nijanand was obligated to pay THI Recurring Fees.

80.     Despite its obligation to do so, Nijanand failed to pay certain of the Recurring Fees due and owing under the Franchise Agreement, in the current amount of $122,614.15.

81.     In addition, Nijanand benefited from its wrongful use of the Travelodge® Marks after termination of the Franchise Agreement and paid no royalty or other Recurring Fees to THI in return for that benefit.

82.     Nijanand's failure to compensate THI constitutes unjust enrichment and has damaged THI.

**WHEREFORE**, THI demands judgment against Nijanand for the Recurring Fees due and owing under the Franchise Agreement, in the current amount of $122,614.15, together with interest, attorneys' fees, costs of suit, and all royalties and other Recurring Fees that should be paid to compensate THI for the period during which Nijanand misused the Travelodge® Marks and was thereby unjustly enriched, together with interest and costs of suit.

## SEVENTH COUNT

83.     THI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 82 of the Verified Complaint.

84.     Pursuant to the terms of the Guaranty, R. Patel and I. Patel agreed, among other things, that upon a default under the Franchise Agreement, they would immediately make each payment and perform each obligation required of Nijanand under the Franchise Agreement.

85.    Despite their obligation to do so, R. Patel and I. Patel have failed to make any payments or perform or cause Nijanand to perform each obligation required under the Franchise Agreement.

86.    Pursuant to the Guaranty, R. Patel and I. Patel are liable to THI for Nijanand's liquidated damages in the amount of $180,000.00, or actual damages in an amount to be determined at trial, and Nijanand's Recurring Fees due and owing under the Franchise Agreement, in the current amount of $122,614.15, and for those additional Recurring Fees attributable to the period during which Nijanand has misused the Travelodge® Marks.

**WHEREFORE**, THI demands judgment against R. Patel and I. Patel for damages in the amount of:

(a)    All liquidated damages or actual damages and Recurring Fees due and owing under the Franchise Agreement, together with interest, attorneys' fees, and costs of suit; and

(b)    All profits, royalties, and other Recurring Fees that should be paid to compensate THI for the period during which Nijanand misused the Travelodge® Marks and was thereby unjustly enriched, together with interest, attorneys' fees, and costs of suit.

## <u>EIGHTH COUNT</u>

87.    THI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 86 of the Verified Complaint.

88.     On February 27, 2013, THI terminated the Franchise Agreement, effective February 27, 2013, due to Nijanand's monetary and insurance defaults.

89.     Section 13.2 of the Franchise Agreement provides that, when the Franchise Agreement is terminated, THI has the right to "without prior notice enter the Facility, and any other parcels, . . . and paint over or remove and purchase for $10.00, all or part of any interior or exterior Mark-bearing signage (or signage face plates), including billboards, whether or not located at the Facility, that [Nijanand has] not removed or obliterated within five days after termination."

90.     Nijanand continues to market, promote, and rent rooms at the Facility through the unauthorized use of the Travelodge® Marks, and such use caused and is likely to continue to cause confusion or mistake among prospective or actual customers.

91.     Nijanand's unauthorized use of the Travelodge® Marks has inflicted and continues to inflict irreparable harm on THI.

**WHEREFORE**, THI demands judgment declaring that THI, or its authorized agent, has the right, without prior notice to Defendants, to enter the property at the Facility and remove any and all exterior signage, exterior items and other exterior materials displaying the Travelodge® Marks.

> **LeClairRyan**
> Attorneys for Plaintiff
> Travelodge Hotels, Inc.
>
> By: _____
>        **Bryan P. Couch**

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

**LeClairRyan**
Attorneys for Plaintiff
Travelodge Hotels, Inc.

By: _____
              **Bryan P. Couch**

Dated: 7/22/14

## VERIFICATION

STATE OF NEW JERSEY     )
                              ) ss:
COUNTY OF MORRIS        )

       Suzanne Fenimore, of full age, being duly sworn according to law, upon her oath, deposes and says:

       I am Senior Director of Contracts Compliance for Travelodge Hotels, Inc., which is plaintiff in this action.

       I have read the foregoing Verified Complaint and all the allegations contained therein. Except as to allegations alleged upon information and belief, which allegations I believe to be true, all the allegations in the Verified Complaint are true based on my personal knowledge, the records of THI, and/or information available through employees of THI.

SUZANNE FENIMORE

Sworn and subscribed to before
me this 18th day of July , 2014

NOTARY PUBLIC

22